# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHIQUITA BIANA BULGER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 16-CV-0726-CVE-FHM |
| | ) | |
| ABOUTANAA EL HABTI, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Now before the Court is petitioner's 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 1). For the reasons below, the petition will be denied.

## I.

This cases arises from petitioner's murder conviction. The victim, Emily Clark, was friendly with petitioner and her boyfriend, Michael Lyke. See Dkt. # 7-5, at 128-29. On the day of her death, police stopped the victim for suspected prostitution. Id. at 20. Officers escorted her to her motel room residence, where they encountered Lyke and his brother, Darius Smith. Id. at 22-23, 133. Smith had an outstanding warrant, and he was arrested. Id. at 22. Officer Treantafeles led Smith and Lyke to believe that the victim had "snitched" on Smith, i.e., disclosed Smith's whereabouts and stated that Smith should go to jail.[2] Id. at 23. Later that evening, petitioner, Lyke, and the victim

---

[1] Petitioner is incarcerated at the Mabel Bassett Correctional Center (MBCC) in McCloud, Oklahoma. See Dkt. # 1 at 1. Aboutanaa El Habti, warden of MBCC, is therefore substituted in place of Debbie Aldridge as party respondent. See Habeas Corpus Rule 2(a). The Clerk of Court shall note the substitution on the record.

[2] This was a lie. Treantafeles testified that he lied about the victim "snitching" because she was rude to him during their initial encounter. Id.

were having dinner at a crowded Tulsa apartment.  Id. at 131.  The victim was shot in the head, and

several witnesses testified that they saw petitioner holding the gun.  Id. at 61, 113, 138.

The State charged petitioner with first degree murder in violation of OKLA. STAT. tit. 21, §

701.7.  See Dkt. # 7-9, at 19.  Her defense theory was that Lyke shot the victim.  See Dkt. # 1, at 6.

Lyke testified against petitioner at the preliminary hearing, but he died before the trial.  Id.  The state

presented, inter alia, the preliminary hearing transcript along with evidence from a jailhouse

informant, who testified that petitioner admitted to shooting the victim at Lyke's urging.  See Dkt.

# 7-5, at 128; see also Dkt. # 7-6, at 53-54.  After a three-day trial, the jury convicted petitioner of

first degree murder.  Id. at 123.  The state court sentenced petitioner to life imprisonment, in

accordance with the jury's recommendation.  See Dkt. # 7-7, at 3.

Petitioner perfected a direct appeal with the Oklahoma Court of Criminal Appeals (OCCA).

See Dkt. # 6-1.  The OCCA affirmed the conviction and sentence.  See Dkt. # 6-3.  Petitioner filed

the instant § 2254 petition (Dkt. # 1) on December 1, 2016.  She raises two propositions of error:

(Ground 1): The state court violated the Confrontation Clause and petitioner's right to
present a defense when it excluded extrinsic evidence impeaching Lyke's testimony; and

(Ground 2): Trial counsel rendered ineffective assistance.

See Dkt. # 1, at 4, 7.

Respondent filed an answer (Dkt. # 6), along with copies of the state court record (Dkt. # 7).

Respondent concedes, and the Court finds, that petitioner timely filed her federal habeas petition and

exhausted state remedies.  See Dkt. # 6, at 1; see also 28 U.S.C. §§ 2244(d), 2254(b)(1)(A).

However, respondent contends that both claims fail on the merits.  The matter is fully briefed and

ready for review.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's habeas claims. See 28 U.S.C. § 2254. Relief is only available under the AEDPA where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, because the OCCA already adjudicated petitioner's claims, this Court may not grant habeas relief unless he demonstrates that the OCCA's ruling: (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1);[3] (2) "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law," id.; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, id. at § 2254(d)(2).

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (alterations in original) (quotations omitted). When the state court's decision "identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quotations omitted). Significantly, an "unreasonable application of" clearly established federal law

---

3    As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)); see also House v. Hatch, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings").

under § 2254(d)(1) "must be objectively unreasonable, not merely wrong." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quotations omitted). "[E]ven clear error will not suffice." Id. Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). The Court must presume the correctness of the state court's factual findings unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Essentially, the standards set forth in § 2254 are designed to be "difficult to meet," Harrington v. Richter, 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002). A state prisoner ultimately "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

## A. Exclusion of Impeachment Evidence (Ground 1)

Petitioner first contends that the exclusion of extrinsic impeachment evidence violated her right to confront Lyke and present a defense. At the preliminary hearing, Lyke testified that he "don't mess with the streets," implying that he was not associated with the gangster lifestyle. See Dkt. # 7-1, at 62. He also claimed that he "d[idn]'t know about guns" well enough to determine whether the murder weapon - which he discarded - was a revolver or a semi-automatic pistol. Id. at 86. After Lyke died, the preliminary hearing transcript was admitted at trial. See Dkt. # 7-5, at 128. Petitioner did not challenge the admission of the transcript on appeal, and she does not appear to challenge it now. See Dkt. # 1, at 6; see also Dkt. # 6-3 at 3. Instead, she argues that the state

4

court should have permitted her to introduce the following impeachment evidence: (a) Lyke shot a man in self defense two months before the preliminary hearing; and (b) Lyke died in a shoot-out after the preliminary hearing.  See Dkt. # 1, at 5; see also Dkt. # 6-1, at 15.

The OCCA considered and rejected this argument on direct appeal.  Citing Crawford v. Washington, 541 U.S. 36 (2004), the OCCA found that petitioner "had an adequate opportunity to cross-examine Lyke at [the] preliminary hearing."  Dkt. # 6-3 at 3.  The OCCA further found that petitioner had a meaningful opportunity to present a defense, and that extrinsic evidence cannot be introduced to impeach specific instances of conduct and attack credibility.  Id.

The OCCA opinion applied the correct standard under federal law.  The Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  Prior testimony can be admitted without violating the Confrontation Clause "where the declarant is unavailable, and . . . the defendant has had a prior opportunity to cross-examine" the witness.  Crawford, 541 U.S. at 59.  The right to confrontation affords "defense counsel . . . wide latitude . . . to question witnesses."  United States v. LaVallee, 439 F.3d 670, 692 (10th Cir. 2006).  However, it does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).  "The touchstone for whether the Confrontation Clause has been satisfied is whether the jury had sufficient information to make a discriminating appraisal of the witness' motives and bias."  United States v. Mullins, 613 F.3d 1273, 1283 (10th Cir. 2010).

A corollary to the right to confront is the right "to present a complete defense."  Holmes v. South Carolina, 547 U.S. 319, 319 (2006) (quotations omitted).  The "right is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the

purposes they are designed to serve." Id. at 324. Absent such concerns, "state . . . rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." United States v. Scheffer, 523 U.S. 303, 308 (1998). "In the specific context of cross-examination," the right to present a defense "amounts to no more than the right to cross-examine contained in the Confrontation Clause." United States v. John, 849 F.3d 912, 917 (10th Cir. 2017).

Having reviewed the record, the Court finds no clear constitutional violation. The jury had ample information to evaluate Lyke's statement that he was unfamiliar with guns and the gangster lifestyle. At the preliminary hearing, petitioner's counsel asked Lyke about his two prior felonies (possession with intent to deliver, assault, and escape from arrest) as well as "two [other] drug cases out of state." Id. at 87. Petitioned's counsel also elicited information about: (1) what Lyke did for a living; (2) how petitioner came to possess a gun, including the exact dates he observed her with a gun; (3) whether Lyke owned any guns; and (4) the details surrounding Lyke's disposal of the murder weapon. See Dkt. # 7-1, at 82-86.

Further, the fact that defense counsel did not initially know about Lyke's self-defense shooting, which occurred before the preliminary hearing, is not dispositive in this case. Neither the Confrontation Clause nor the Sixth Amendment are "rule[s] of compelled . . . discovery," ensuring that the accused has the best information available to attack the witness' credibility. See LaVallee, 439 F.3d at 692. As to Lyke's later death in a shoot-out, his conduct after the preliminary hearing would not specifically impeach his earlier statements. Evidence about the shoot-out would instead constitute a "general attack" on Lyke's credibility. Such attacks are not protected by the

Constitution. See Dalton v. Dinwiddie, 2008 WL 930800, at * 3 (10th Cir. April 8, 2008) (citing

Davis v. Alaska, 415 U.S. 308 (1974)).[4]

The Court finally observes that Lyke's testimony was not the only direct evidence linking

petitioner to the murder. See Duvall v. Reynolds, 139 F.3d 768, 789 (10th Cir. 1998) (habeas courts

are not concerned with whether evidence was properly excluded under Oklahoma law; the "inquiry

hinges on the materiality of the excluded evidence to the defense.") (quotations omitted). Two other

witnesses observed petitioner with the gun in her hand immediately after hearing the gunfire.

Eyewitness Ronnell Gardner recalled that, after the gunshot, "[petitioner] had the gun and [Lyke]

had grabbed the gun trying to get it out of her hand." See Dkt. # 7-5, at 61. Lyke's mother, who

owned the apartment, remembered looking at petitioner while petitioner held the gun, and saying:

"What the f**k have you done, what did you do?" Id. at 113. A jailhouse informant who knew

petitioner also testified that petitioner initially blamed Lyke, but eventually admitted to "put[ting]

the gun to the back of [Clark's] head and . . . sho[oting] her." See Dkt. # 7-6, at 51, 53.

For these reasons, the Court agrees that petitioner had an adequate opportunity to cross

examine Lyke and to present a defense. The OCCA's ruling is reasonable, and Ground 1 fails.

## B. Ineffective Assistance of Counsel (Ground 2)

Petitioner next argues that trial counsel rendered ineffective assistance. See Dkt. # 1, at 7.

According to petitioner, trial counsel failed to request a jury instruction on accomplice testimony.

Id. Trial counsel also purportedly failed to ask that certain portions of petitioner's police interview

be redacted. Id. at 8. Detectives expressed disbelief over petitioner's verison of events, which she

---

[4]     The Court cites this decision, and other unpublished decisions herein, as persuasive authority.
        See FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

believes tainted the jury.  Id. at 9. For example, the detectives: (1) stated that there is no way the shooting could have taken place the way petitioner described; (2) started to tell petitioner that she was "full of - " but stopped to say that she was "killing herself here;" (3) told petitioner that she knew exactly who was in the apartment, and there was "no way" that petitioner was "not standing there looking at the person who shot the victim."  Dkt. # 6-1, at 25-26.  The detectives also told petitioner that she was the "number one suspect" and said she was "full of crap."  Id. at 26-27.

The OCCA rejected these claims under the two-prong test announced in Strickland v. Washington, 466 U.S. 668 (1984).   Under Strickland, a defendant must show that his or her counsel's performance was deficient and that the deficient performance was prejudicial.  466 U.S. at 687.  To satisfy the second prong, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Hobdy v. Raemisch, 916 F.3d 863 (10th Cir. 2019) (quotations omitted).  The OCCA concluded that petitioner failed to show error or prejudice under Strickland.  The opinion elaborated that "there was no evidence that Lyke participated in, planned, or encouraged the commision of the offense."  Dkt. # 6-3, at 5.  "As such," the OCCA found that "he was not an accomplice and there was no need for an instruction upon the requirement of corroboration."  Id.  As to the police interview, the OCCA found that it was properly admitted without redaction:

> Detective Kennedy testified before the video was shown to the jury.  He explained that when they interviewed [petitioner] they had not completed their investigation and did not know what had happened.  Kennedy's statements in the video were relevant and admissible to show the circumstances under which [petitioner] made her admissions against interest. Although a few of the detectives' comments nearly constituted personal expressions of [petitioner's] credibility, the comments were not such that a reasonable jury would not recognize them as interrogation technique.

Id. at 6.

Viewing the decision with double deference, <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009), the Court agrees that Ground 2 fails. Even assuming Lyke were an accomplice, the requested instruction would merely have explained that "[a] conviction cannot be had upon the testimony of [Lyke] unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense." OKLA. STAT. tit. 22, § 742. As discussed above, Lyke's testimony was corroborated by two eyewitnesses and petitioner's cell mate. <u>See</u> supra, Section A. Petitioner has, therefore, not demonstrated that an accomplice instruction would have changed the result in this case.

The petition also fails to demonstrate prejudice, under the double-deference standard, as to the admission of the unredacted police interview. The record reflects that petitioner did not testify at trial, and her credibility was, therefore, not directly at issue. Further, based on the strong evidence of guilt, the Court is also not convinced that redacting the offending comments would have changed the result at trial. <u>See</u> <u>Strickland</u>, 466 U.S. at 694 (A reasonable probability of a different outcome "is a probability sufficient to undermine confidence in the outcome").

In sum, petitioner has not demonstrated that the OCCA misapplied federal law or the facts to her ineffective-assistance of counsel claim, and Ground 2 fails. Having found no federal constitutional violation, the petition (Dkt. # 1) must be denied.

**III.**

Habeas Corpus Rule 11 requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court rejects the merits of petitioner's constitutional claims, he must

make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons discussed above, petitioner has not made the requisite showing on any of her claims. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.      The petition for a writ of habeas corpus (Dkt. # 1) is **denied.**

3.      A certificate of appealability is **denied**.

4.      A separate judgment will be entered herewith.

**DATED** this 19th day of December, 2019.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE